T.C. Memo. 2006-188

UNITED STATES TAX COURT

DONALD AND YVONNE CLAYTON, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17704-05L.          Filed September 5, 2006.

Terri A. Merriam, Jaret R. Coles, Asher B. Bearman, and
Jennifer A. Gellner, for petitioners.

Thomas N. Tomashek and Gregory M. Hahn, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: Petitioners petitioned the Court under section
6330(d) to review the determination of respondent's Office of
Appeals (Appeals) sustaining a proposed levy relating to $203,798
of Federal income taxes owed by petitioners for 1982 through

1986.[1]  Petitioners argue that Appeals was required to accept their offer of $100,000 to compromise what they estimate is their approximately $275,000 Federal income tax liability for 1982 through 1996.[2]  We decide whether Appeals abused its discretion in rejecting that offer.[3]  We hold it did not.

FINDINGS OF FACT[4]

The parties filed with the Court stipulations of fact and accompanying exhibits.  The stipulated facts are found accordingly.  When the petition was filed, petitioners resided in Benton City, Washington.

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code.  Dollar amounts are rounded.

[2] While the proposed levy related only to 1982 through 1986, petitioners offered to compromise their liability for 1987 through 1996 as well.

[3] Petitioners also dispute respondent's determination that they are liable for increased interest under sec. 6621(c).  This interest relates to deficiencies attributable to "computational adjustments", see secs. 6230(a)(1) and 6231(a)(6), made following the Court's decision in Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515.  As to this dispute, the parties have agreed to be bound by a final decision in Ertz v. Commissioner, docket No. 20336-04L, which involves a similar issue.

[4] Following a trial of this case, the Court ordered each party to file an opening brief of no more than 25 pages. Petitioners filed a 25-page opening brief that attempts to circumvent the Court's order by incorporating (1) lengthy arguments made in their 40-page pretrial memorandum and (2) 90 paragraphs of stipulated facts.  To the extent that an argument or proposed finding of fact is not specifically set forth in petitioners' opening brief, we decline to consider it.

Beginning in 1985, petitioners' Federal income tax returns claimed losses and credits from their involvement in various partnerships organized and operated by Walter J. Hoyt, III (Hoyt). The partnerships were Shorthorn Genetic Engineering 1985-4, Timeshare Breeding Services 1987-2, Timeshare Breeding Services J.V., Timeshare Breeding Services 1989-1, and Shorthorn Genetic Engineering 1985-5. Hoyt was each partnership's general partner and tax matters partner, and the partnerships were all subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 401, 96 Stat. 648. Hoyt was convicted on criminal charges relating to the promotion of these partnerships.

Petitioners' claim to the losses and credits resulted in the underreporting of their 1982 through 1986 taxable income. On March 8, 2004, respondent mailed to petitioners a Form CP-90, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice informed petitioners that respondent proposed to levy on their property to collect Federal income taxes that they owed for 1982 through 1986. The notice advised petitioners that they were entitled to a hearing with Appeals to review the propriety of the proposed levy.

On April 6, 2004, petitioners asked Appeals for the referenced hearing. On June 8, 2005, Linda Cochran (Cochran), a settlement officer in Appeals, held the hearing with petitioners'

counsel.[5]  Cochran and petitioners' counsel discussed two issues. The first issue concerned petitioners' intent to offer to compromise their 1982 through 1996 Federal income tax liability to promote effective tax administration.  Petitioners contended that Appeals should accept their offer as a matter of economic hardship, equity, and public policy.  Petitioners stated that it took a long time to resolve the Hoyt partnership cases and noted that Hoyt had been convicted on the criminal charges.  The second issue concerned an interest abatement case under section 6404(e) that petitioners had pending in this Court.  That case related to the same years at issue here.  Petitioners claimed that the proposed levy should be rejected because that case was pending.

On June 7, 2005, petitioners tendered to Cochran on Form 656, Offer in Compromise, a written offer to pay $100,000 to compromise their estimated approximately $275,000 liability.  The offer was limited to a claim of effective tax administration because petitioners had sufficient assets to pay the liability in full.  Petitioners supplemented their offer with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, four letters totaling approximately 75 pages, and volumes of documents.  The Form 433-A reported that

[5] Petitioners were 69 and 72 years old at the time of the hearing.

petitioners owned assets with a total current value of $547,510, inclusive of the following:[6]

| Assets | Current value |
|---|---|
| Cash in accounts | $3,600 |
| Cash on hand | 165 |
| Vehicles: | |
|   1993 Chevy 1500 pickup | 2,040 |
|   1998 Dolphin motor home | 42,160 |
|   2003 Dodge Grand Caravan | 9,810 |
| Real estate | 154,090 |
| Retirement Account | 335,645 |
| | 547,510 |

The Form 433-A reported that petitioners' debt consisted of $43,822 owed as to the 1998 Dolphin motor home, $67,777 owed as to the real estate, and $1,491 owed on credit cards. The Form 433-A reported the following monthly items of income and expense:

| Items of income | Amount |
|---|---|
| Husband's pension | $1,854 |
| Wife's pension | 662 |
| | 2,516 |

| Items of expense | Amount |
|---|---|
| Food, clothing, and miscellaneous | $800 |
| Housing | 1,498 |
| Transportation | 296 |
| Medical expenses | 528 |
| Taxes (Income) | 529 |
| Debt secured by motor home | 478 |
| Other expense | 1,300 |
| | 5,429 |

_____

[6] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "The amount you could sell the asset for today".

Cochran determined that petitioners' net realizable equity in their cash was the $3,600 reported in their bank accounts and that petitioners' net realizable equity in their real estate and vehicles was the same as the reported values (as reduced by the related liabilities), except she reduced the reported value of each vehicle by 20 percent to reflect their "quick sale values".[7] As to the retirement account, Cochran noted that petitioners' representative had informed her that the value of the account was reported at 15 percent less than the actual value in order to reflect taxes and concluded that the full value of the retirement account was $385,992.[8] Alternatively, Cochran determined, the value of the retirement account was $270,992 after subtracting from the $385,992 a withdrawal of $115,000 to pay petitioners' $100,000 proposed offer and related taxes at 15 percent. Cochran summarized petitioners' assets and liabilities as follows:

---

[7] Cochran was told by petitioners that they had ascertained the value of each vehicle by using its trade-in value and considering its condition to be "fair".

[8] We are unable to determine the specifics underlying Cochran's calculation of the $385,992.

|  Assets | Fair market value | Quick sale value | Encumbrance | Net realizable equity |
|---|---|---|---|---|
| Cash | $3,600 | -- | -- | 3,600 |
| Retirement account | 385,992 | -- | -- | 385,992/ 270,992 |
| Vehicles: | | | | |
| 1993 Chevy pickup | 2,040 | 1,632 | -- | 1,632 |
| 1998 Dolphin motor home | 42,160 | 33,728 | 43,822 | -0- |
| 2003 Dodge Grand Caravan | 9,810 | 7,848 | -- | 7,848 |
| Real estate | 154,090 | -- | 67,777 | [1]89,913 |
| | 597,692 | 43,208 | 111,599 | 488,985/ 373,985 |

[1] Petitioners' net realizable equity in their home is actually $86,313. This slight mathematical error is not significant to the overall calculation.

Cochran increased petitioners' reported income by $290 per month to reflect the monthly portion of $3,493 in wages that petitioners reported on their 2004 Form 1040, U.S. Individual Income Tax Return, ($3,493/12 = $291.08). Cochran also adjusted some of petitioners' reported expenses. First, she disallowed $6 of the reported $800 in monthly food, clothing, and miscellaneous expenses to reflect her application of respondent's guidelines (i.e., the national standard) to petitioners' reported monthly income of $2,516 and petitioners' household size of two individuals. Second, she disallowed $405 of the reported household expenses to reflect her application of local guidelines to petitioners' circumstances. Third, she disallowed the reported $478 monthly expense for the motor home because the expense was not a basic living expense within the meaning of

Internal Revenue Manual (IRM) section 5.8.11.2.1; she also noted that petitioners had two other vehicles.  Finally, she reduced petitioners' other expense of $1,300 to $255, noting that petitioners had not substantiated the $1,300 but that $255 represented the average amount of attorney's fees paid by petitioners in the preceding 29 months.  Cochran concluded that petitioners' monthly income was $2,806 (reported income of $2,516 + $290), that petitioners' monthly expenses totaled $3,495 (reported amount of $5,429 - $6 - $405 - $478 - $1,300 + $255), and that petitioners had had no monthly excess income or future income potential.

Cochran also observed that petitioners received in 2004 a $65,700 taxable distribution from an individual retirement account.  Cochran noted that petitioners' monthly allowable expenses of $3,495 exceeded their monthly income of $2,806 by $689 and allotted $8,268 ($689 x 12) of the $65,700 distribution to the payment of petitioners' necessary living expenses. Cochran considered the balance of the distribution, $57,432, to be a dissipation of assets and factored that balance into petitioners' reasonable collection potential.  Cochran concluded that petitioners' net realizable equity in their assets was

either $488,985 or $373,985 and that their reasonable collection potential was either $546,417 or $431,417.

On August 18, 2005, Appeals issued petitioners a notice of determination sustaining the subject levy proposed by respondent to collect petitioners' Federal income tax liability. The notice concludes that petitioners' $100,000 offer-in-compromise is not an appropriate collection alternative to the proposed levy. The notice, citing IRM sections 5.8.11.2.1 and 5.8.11.2.2, states that petitioners' offer does not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration on the basis of economic hardship, equity, or public policy. As to petitioners' offer-in-compromise to promote effective tax administration due to economic hardship, the notice states:

> Considered under economic hardship, the taxpayers have the ability to pay all assessed amounts and still have assets with equity remaining worth over $285,000. The amount being offered by the taxpayers represents 18% of the taxpayers' Reasonable Collection Potential. The taxpayers' ages and medical conditions were considered but were insufficient to overlook the taxpayers' substantial equity in their assets. The taxpayers have sufficient equity in their assets to pay the tax amounts owed and still meet their necessary living expenses for the foreseeable future. The taxpayers, therefore, failed to document economic hardship in accordance with Internal Revenue Manual 5.8.11.2.1.

As to petitioners' offer-in-compromise to promote effective tax

administration based on equity and public policy, the notice

states:  "When considered under public policy or equity grounds,

the taxpayers' Effective Tax Administration offer proposal fails

to meet the criteria for such consideration under Internal

Revenue Manual 5.8.11.2.2 * * * [and], therefore, cannot be

considered."  The notice further states as to Cochran's balancing

of efficient collection with the legitimate concerns of taxpayers

that

> The taxpayers' concerns about the proposed collection
> action generally fall within two areas: (1) pending
> litigation (the interest abatement case) and (2) a
> viable collection alternative in the form of their
> $100,000 offer in compromise.
>
> The Settlement Officer has balanced the taxpayers'
> first area of concern by confirming that the taxpayers'
> interest abatement case has been decided in Tax Court,
> with the decision being that the taxpayers have
> conceded the interest abatement issue for the years
> 1982, 1983, 1984, 1985, and 1986.
>
> With respect to the taxpayers' second area of concern,
> the Settlement Officer has evaluated the taxpayers'
> $100,000 offer to compromise the underlying liabilities
> as a collection alternative to the proposed levy
> action.  Based on that evaluation, the taxpayers' offer
> of $100,000 could not be recommended for acceptance,
> and therefore cannot be considered as a collection
> alternative.
>
> In all other respects, the proposed levy action
> regarding the taxpayers represents the only efficient
> means for collection of the liability at issue in this
> case.

The notice states that petitioners have neither offered an argument nor cited any authority to permit Appeals to deviate from the provisions of the IRM.

As to petitioners' claim at the hearing for an interest abatement, Cochran ascertained that petitioners had filed the case in this Court seeking an abatement of interest under section 6404(e) for the same years at issue here. She also learned that the parties to that case had on February 7, 2005, filed with this Court a stipulated decision through which petitioners conceded they were not entitled to their requested interest abatement. Cochran determined that petitioners were not entitled in this case to their claim for an abatement of interest, either under section 6404(e) or as part of an offer-in-compromise.

### OPINION

This case is another in a long list of cases brought in this Court involving respondent's proposal to levy on the assets of a partner in a Hoyt partnership to collect Federal income taxes attributable to the partner's participation in the partnership. Petitioners argue that Appeals was required to let them pay $100,000 to compromise what they estimate is their approximately $275,000 Federal income tax liability for 1982 through 1996. Where an underlying tax liability is not at issue in a case invoking our jurisdiction under section 6330(d), we review the determination of Appeals for abuse of discretion. See Sego v.

Commissioner, 114 T.C. 604, 610 (2000); see also Barnes v. Commissioner, T.C. Memo. 2006-150. We reject the determination of Appeals only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Cox v. Commissioner, 126 T.C. 237, 255 (2006); Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005).

Where, as here, we decide the propriety of Appeals's rejection of an offer-in-compromise, we review the reasoning underlying that rejection to decide whether the rejection was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of Appeals, and we do not decide independently the amount that we believe would be an acceptable offer-in-compromise. See Murphy v. Commissioner, supra at 320; see also Barnes v. Commissioner, supra; Fowler v. Commissioner, T.C. Memo. 2004-163; Fargo v. Commissioner, T.C. Memo. 2004-13, affd. 447 F.3d 706 (9th Cir. 2006). Nor do we usually consider arguments, issues, or other matters raised for the first time at trial, but we limit ourselves to matter brought to the attention of Appeals. See Murphy v. Commissioner, supra at 308; Magana v. Commissioner, 118 T.C. 488, 493 (2002). "[E]vidence that * * * [a taxpayer] might have presented at the section 6330 hearing (but chose not to) is not admissible in a trial conducted pursuant to section 6330(d)(1) because it is not

relevant to the question of whether the Appeals officer abused her discretion." Murphy v. Commissioner, supra at 315.[9]

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Section 7122(c) authorizes the Commissioner to prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. The applicable regulations, section 301.7122-1(b), Proced. & Admin. Regs., list three grounds on which the Commissioner may accept an offer-in-compromise of a Federal tax debt. These grounds are "Doubt as to liability", "Doubt as to collectibility", and to "Promote effective tax administration". Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs.

---

[9] In Murphy v. Commissioner, 125 T.C. 301 (2005), the Court declined to include in the record external evidence relating to facts not presented to Appeals. The Court distinguished Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), and held that the external evidence was inadmissible in that it was not relevant to the issue of whether Appeals abused its discretion. In a memorandum that petitioners filed with the Court on Apr. 13, 2006, pursuant to an order of the Court directing petitioners to explain the relevancy of any external evidence that they desired to include in the record of this case, petitioners made no claim that they had offered any of the external evidence to Cochran. Instead, as we read petitioners' memorandum in the light of the record as a whole, petitioners wanted to include the external evidence in the record of this case to prove that Cochran abused her discretion by not considering facts and documents that they had consciously decided not to give to her. Consistent with Murphy v. Commissioner, supra, we sustained respondent's relevancy objections to the external evidence. Accord Barnes v. Commissioner, T.C. Memo. 2006-150.

Petitioners argue that respondent was required to compromise their tax liability to promote effective tax administration. The Commissioner may compromise a tax liability to promote effective tax administration when collection of the full liability will create economic hardship and the compromise would not undermine compliance with the tax laws by taxpayers in general. See sec. 301.7122-1(b)(3)(i), (iii), Proced. & Admin. Regs. If a taxpayer does not qualify for effective tax administration compromise on grounds of economic hardship, the regulations also allow the Commissioner to compromise a tax liability to promote effective tax administration when the taxpayer identifies compelling considerations of public policy or equity. See sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Cochran determined that petitioners' reasonable collection potential was either $546,417 or $431,417. Under either calculation, petitioners can afford to pay their estimated approximately $275,000 tax liability and therefore only qualify for an offer-in-compromise to promote effective tax administration. See sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; cf. Fargo v. Commissioner, 447 F.3d 706 (9th Cir. 2006) (taxpayers made an offer-in-compromise to promote effective tax administration where they had sufficient assets to pay their tax liability in full).

Cochran considered all of the evidence submitted to her by petitioners and applied the guidelines for evaluating an offer-in-compromise to promote effective tax administration. Cochran determined that petitioners' offer was unacceptable because they were able to pay more than the $100,000 that they offered to compromise their tax liability. Cochran's determination to reject petitioners' offer-in-compromise was not arbitrary, capricious, or without a sound basis in fact or law, and it was not abusive or unfair to petitioners. Cochran's determination was based on a reasonable application of the guidelines, which we decline to second-guess. See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006); Barnes v. Commissioner, supra.

Petitioners make seven arguments in advocating a contrary result. First, petitioners argue that Cochran's rejection of their offer-in-compromise conflicts with the congressional committee reports underlying the enactment of section 7122. According to petitioners, their case is a "longstanding" case, and those reports require that respondent resolve such cases by forgiving interest and penalties that otherwise apply. We disagree with petitioners' reading and application of the legislative history underlying section 7122. Petitioners' argument on this point is essentially the same argument that was considered and rejected by the Court of Appeals for the Ninth

Circuit in <u>Fargo v. Commissioner</u>, 447 F.3d at 711-712.  We do likewise here for the same reasons stated in that opinion.  Accord <u>Barnes v. Commissioner</u>, T.C. Memo. 2006-150.  We add that petitioners' counsel participated in the appeal in <u>Fargo v. Commissioner</u>, <u>supra</u>, as counsel for the amici.  While petitioners in their brief suggest that the Court of Appeals for the Ninth Circuit knowingly wrote its opinion in <u>Fargo</u> in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioners), and otherwise to allow those clients to receive an abatement of their liability attributable to partnerships such as those here, we do not read the opinion of the Court of Appeals for the Ninth Circuit in <u>Fargo</u> to support that conclusion.

Second, petitioners argue that Cochran inadequately considered their unique facts and circumstances.  We disagree.  Cochran reviewed and considered all information given to her by petitioners.  On the basis of the facts and circumstances of petitioners' case as they had been presented to her, Cochran determined that petitioners' offer did not meet the applicable guidelines for acceptance of an offer-in-compromise to promote effective tax administration based on economic hardship or public policy or equity grounds.  We find no abuse of discretion in that determination.

Petitioners take exception to the fact that the notice of determination does not list either petitioners' age or their employment status, speculating from this fact that Cochran did not adequately take into account their special circumstances. Petitioners also assert that Cochran failed to take their special circumstances into account because, they assert, she did not reflect that they both have "significant medical conditions" and that their medical expenses will increase in later years. Petitioners' assertions and speculation are without merit. We do not believe that Appeals must specifically list in the notice of determination every single fact that it considered in arriving at the determination. See Barnes v. Commissioner, supra. Nor do we find that Cochran inadequately considered the information actually given to her by petitioners. Cochran allowed the full amount of medical expenses that petitioners submitted on their Form 433-A. While petitioners argue that Cochran abused her discretion by not allowing additional medical expenses that they claim they will incur in future years on account of their age, we disagree. Petitioners' claim to these expenses is too speculative in that it is based not on their specific situation but on their reading of Government studies on the relationship between health costs and the elderly in general. We do not believe that Appeals abused its discretion in not allowing petitioners' proffered anticipated future medical costs. See

Fargo v. Commissioner, 447 F.3d at 710 (it is not an abuse of discretion to disregard claimed medical expenses that are speculative or not related to the taxpayer).

Third, petitioners argue that Cochran did not adequately take into account the economic hardship they claim they will suffer by having to pay more than $100,000 as to their tax liability. We disagree. Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses." Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some illustrative examples. One of the examples involves a taxpayer who provides fulltime care to a dependent child with a serious longterm illness. A second example involves a taxpayer who would lack adequate means to pay his basic living expenses were his only asset to be liquidated. A third example involves a disabled taxpayer with a fixed income and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because of his disability. See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs. None of these examples bears any resemblance to this case but instead "describe more dire circumstances". Speltz v. Commissioner, 454 F.3d at 786.

Nor have petitioners articulated with any specificity the purported economic hardship they will suffer if they are not allowed to compromise their liability for $100,000. Petitioners have given us no reason to disagree with the essence of Cochran's determination that petitioners' health does not render them "incapable of earning a living", nor have we reason to conclude that petitioners' "financial resources will be exhausted providing for care and support during the course of the condition".[10] Sec. 301.7122-1 (c)(3)(i)(A), Proced, & Admin. Regs.

We also are mindful that any decision by Cochran to accept petitioners' offer-in-compromise to promote effective tax administration must be viewed against the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs. That section requires that Cochran deny petitioners' offer if her acceptance of it would undermine voluntary compliance with tax laws by taxpayers in general. Thus, even if we were to assume arguendo that petitioners would suffer economic hardship, a finding that

_____

[10] We also note that the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d 706, 710 (9th Cir. 2006), affg. T.C. Memo. 2004-13, dismissed a similar claim of economic hardship advanced by the taxpayers there. Although those taxpayers had more assets than petitioners, the court emphasized that a finding of economic hardship is within the discretion of Appeals. Under the facts at hand, we find no abuse of discretion in Cochran's determination that petitioners would suffer no economic hardship were they required to pay more than their $100,000 offer.

we emphasize we do not make, we would not find that Cochran's rejection of petitioners' offer was an abuse of discretion because we conclude below (in our discussion of petitioners' fourth argument) that her acceptance of that offer would have undermined voluntary compliance with tax laws by taxpayers in general. The prospect that acceptance of an offer will undermine compliance with the tax laws militates against its acceptance. See Rev. Proc. 2003-71, 2003-2 C.B. 517; IRM sec. 5.8.11.2.2; see also Barnes v. Commissioner, T.C. Memo. 2006-150.

Fourth, petitioners argue that public policy demands that their offer-in-compromise be accepted because they were victims of fraud. We disagree. While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two illustrative examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. See Speltz v. Commissioner, 454 F.3d at 786. Unlike the exceptional circumstances exemplified in the regulations, petitioners' situation is neither unique nor exceptional in that petitioners' situation mirrors

that of numerous taxpayers who claimed tax shelter deductions in the 1980s and 1990s, obtained the tax advantages, promptly forgot about their "investment", and now realize that paying their taxes will require a change of lifestyle.[11]  See Barnes v. Commissioner, supra.

We also agree with a claim by respondent that compromising petitioners' case on grounds of public policy or equity would not promote effective tax administration.  While petitioners portray themselves as victims of Hoyt's alleged fraud and respondent's alleged delay in dealing with Hoyt, they take no responsibility for their tax predicament.  We cannot agree that acceptance by respondent of petitioners' $100,000 offer to satisfy their approximately $275,000 tax liability would enhance voluntary compliance by other taxpayers.  A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of

---

[11] Of course, the examples in the regulations are not meant to be exhaustive, and petitioners have a more sympathetic case than the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in Hoyt's shelters to be culpable of negligence, most recently in Keller v. Commissioner, T.C. Memo. 2006-131, nor prevented the Courts of Appeals for the Sixth and Tenth Circuits from affirming our decisions to that effect in Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279, and Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.[12]

Fifth, petitioners argue that Cochran failed to balance efficient collection with the legitimate concern that collection be no more intrusive than necessary. We disagree. Cochran thoroughly considered this issue on the basis of the information and proposed collection alternative given to her by petitioners. She concluded that "the proposed levy action regarding the taxpayers represents the only efficient means for collection of the liability at issue in this case". While petitioners assert that Cochran did not consider all of the facts and circumstances of this case, "including whether the circumstances of a particular case warrant acceptance of an amount that might not

---

[12] Nor does the fact that petitioners' case may be "longstanding" overcome the detrimental impact on voluntary compliance that could result from respondent's accepting petitioners' offer-in-compromise. An example in IRM sec. 5.8.11.2.2 implicitly addresses the "longstanding" issue. There, the taxpayer invested in a tax shelter in 1983, thereby incurring tax liabilities for 1981 through 1983. He failed to accept a settlement offer by respondent that would have eliminated a substantial portion of his interest and penalties. Although the example, which is similar to petitioners' case in several respects, would qualify as a "longstanding" case by petitioners' standards, the offer was not acceptable because accepting it would undermine compliance with the tax laws.

otherwise be acceptable under the Secretary's policies and procedures", sec. 301.7122-1(c)(1), Proced. & Admin. Regs., we find to the contrary. Cochran thoroughly considered petitioners' arguments for accepting their offer-in-compromise, and she rejected the offer only after concluding that petitioners could pay more of their tax liability than the $100,000 they offered. Cf. IRM sec. 5.8.11.2.1.11 ("When hardship criteria are identified but the taxpayer does not offer an acceptable amount, the offer should not be recommended for acceptance").

Sixth, petitioners argue that Cochran inappropriately failed to consider whether they qualified for an abatement of interest for reasons other than those described in section 6404(e). We disagree. While Cochran declined to accept petitioners' request to reject the proposed levy because their interest abatement case had been resolved, we find nothing to suggest that Cochran believed that petitioners' sole remedy for interest abatement in this case rested on the rules of section 6404(e). In fact, regardless of the rules of section 6404(e) and the stipulated decision, Cochran obviously would have abated interest in this case had she agreed to let petitioners compromise their approximately $275,000 liability by paying less than the amount of interest included within that liability.

Seventh, petitioners argue that Cochran erred in not allowing their counsel additional time to submit documents for

her consideration and by not informing petitioners of the contents of the notice of determination before it was issued. We disagree on both counts. We do not believe that Cochran abused her discretion by rejecting petitioners' offer-in-compromise simply because she may have established a due date for submission of information. See Barnes v. Commissioner, T.C. Memo. 2006-150. By their own admission, petitioners' counsel failed to meet many of Cochran's deadlines (before Cochran extended them) because petitioners' counsel was pressed by other business from their acceptance of many cases involving other partners of the Hoyt partnerships. Nor do we believe that Cochran abused her discretion by rejecting petitioners' offer-in-compromise simply because she may not have discussed with petitioners the contents of the notice of determination (and given them a chance to dispute it) before issuing the notice of determination to them. Id.; cf. Fargo v. Commissioner, 447 F.3d at 712-713 (holding that Appeals has no duty to negotiate with a taxpayer before rejecting the taxpayer's offer-in-compromise). In this regard, we also disagree with petitioners that Cochran had an affirmative duty to attempt unilaterally to find additional facts in support of their case as soon as she came to the conclusion that their offer-in-compromise should be denied. See Barnes v. Commissioner, supra.

We hold that Appeals did not abuse its discretion in rejecting petitioners' $100,000 offer-in-compromise. In so

holding, we express no opinion as to the amount of any compromise that petitioners could or should be required to pay, or that respondent is required to accept.  The only issue before us is whether Appeals abused its discretion in refusing to accept petitioners' specific offer-in-compromise in the amount of $100,000.  See Speltz v. Commissioner, 124 T.C. at 179-180.  We have considered all arguments made by petitioners for a contrary holding and have found those arguments not discussed herein to be without merit.

An appropriate order will be issued.